The opinion of the Court was delivered by
Dunkin, Ch. J.
The general principles which should regulate the conduct of trustees, and the measure of their accountability, are stated in the case of Boggs vs. Adger, (cited in the decree,) and have been repeatedly recognized. When left to his own judgment, the trustee must exercise his discretion in the manner in which a prudent man would in the management of his own affairs. If he is at a loss as to the mode of investment, or if the condition of the parties or of the estate may seem to require a particular mode of investment, it is at once the duty and the privilege of the trustee to seek the instruction of the Court, and thereby insure its protection. It is hardly necessary to say, that if he departs from the instructions thus sought and received, he acts on a responsibility which he must be prepared to vindicate.
*301 By the order of February, 1859, (made in a cause in which the trustee and. cestui que trust were all parties, and under which the trustee received his appointment,) it was provided that, upon receiving the trust fund from the Commissioner in Equity, the trustee should invest the same in slaves, “ if, in the judgment of the trustee, said investment can be made on advantageous terms, and that, until said investment be made, he do pay tbe annual interest accruing on said trust fund to his cestui que trust” The order is plain and unambiguous in its terms, scarcely susceptible' of misinterpretation; yet it is a departure, in some respects, from the ordinary practice and policy of the Court. Tbe circumstances which seemed to justify this departure are fully stated in the decree of the Chancellor, and the parol testimony exhibited the motives which probably actuated the several parties in assenting to the arrangement. Twelve months previously, a different person had been appointed trustee, (the defendant, according to his answer, having then declined,) but when the person thus appointed ascertained that he was to give bond and sureties, and thereupon invest the fund in slaves, or in consequence of some other consideration, he declined to comply with the terms of his appointment. Thereupon, the application to the defendant (who, it was said at the bar, is a brother of Mrs. Snelling,) was renewed, and he was assured that, if he would accept the trust, the parties did not wish the investment in slaves, and he could have the use of the money during Mrs. Snell•ing’s lifetime, paying to her the annual interest on the fund. Mr. Hagood, the former Commissioner, proved that such was considered a desirable arrangement for trustees, and the solicitor in the cause testified that the pecuniary condition of the defendant rendered it particularly convenient to him, and, he believes, influenced his determination. Whatever may have been the motive of the parties, the order was made with the concurrence of all. The fund *302 was to be held by the trustee until, in his judgment, it could be advantageously invested in slaves, and, until such investment, he was to pay to Mrs. Snelling the annual interest. If, on 7th February, 1860, the defendant had been called on for the interest, it would scarcely be deemed a satisfactory reply that, finding it inconvenient or impracticable to make seven per cent., he had invested the fund in six per cent. United States stock, or in his neighbor’s bond, well secured, but the interest not yet due, and had thus exercised the discretion, properly confided to trustees. The fallacy of the reply would be transparent on reference to the order. Does it make any difference in his favor that he had paid the annual interest regularly for several years, as prescribed by the order, and then, sua sponte, had adopted this mode of applying or investing the trust fund. The order of February, 1859, though not properly a decree, was an administrative order, and was equally obligatory upon the parties until authoritatively rescinded or modified, after due notice to those interested. That order left no room for the exercise of the defendant’s discretion, except as to the investment in slaves, and provided, in the meantime, for the security of the fund in defendant’s hands, and for his payment of the annual interest. If, in the course of time, and in the progress of events, circumstances changed, and either, or all of the parties desired a modification or rescission of the order, it was his or their obvious course, upon proper notice, to submit their application to the Court, which, upon hearing the parties, would make such order as the circumstances would seem to require or render expedient. It is due to the candor of the defendant’s counsel to state his disavowal of the position that the ex parte application, in November, 1863, was of this character. Upon this point, the judgment of the Court in Sollee vs. Croft, (7 Rich. Eq. 34,) is as conclusive as the reasons are satisfactory. Until the order of February *303 1859, had been regularly modified or rescinded, its continuing efficacy and obligation remained. In one of our cases it is said by Chancellor Harper, that where a decree or order is made by consent, it is the parties’ own act, and they should take such decree as they can abide by. Such was obviously the character of this order. The effect of it was that, until invested in slaves, the fund should stand secured by the defendant’s official bond, he paying the annual interest. Under such circumstances, the provisions of the Act of 1861, whatever may be its efficacy, have no application. The parties had themselves agreed upon a mode of investment mutually satisfactory, which had received the sanction of the Court, and which had been carried into effect.
It is ordered and decreed that the appeal be dismissed.
"Wardlaw, A. J., concurred.
Inglis, A. J., absent at the hearing

Decree affirmed.